The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR08-244RSL |
| Plaintiff, | |
| v. | DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION FOR DETENTION |
| SEAN WILLIAM DOAK, | |
| Defendant. | **November 24, 2015 at 11:00 a.m.** |

## I.      Response

COMES NOW THE DEFENDANT, SEAN WILLIAM DOAK, by and through his attorney of record, Michele Shaw, and respectfully requests this Court release Mr. Doak on his personal recognizance, with conditions, pending trial.  In the alternative, Defense requests that Mr. Doak be released on $100,000 bail, bondable, with conditions imposed.

**MICHELE SHAW**
Attorney at Law
2125 Western Ave #330
Seattle, WA 98121
Bus (206) 448-9612
Fax (206) 319-5473
michele@micheleshawlaw.com

The following conditions would be appropriate and should reassure the Court that Mr.

Doak will make all Court appearances:

1. Mr. Doak will remain in residence at 2201 53rd Avenue, Unit 2, Vernon, British Columbia, Canada VLT9N8 with his wife, Julie Sanregret, or at any other location as directed by U.S. Pretrial Services;

2. Mr. Doak shall commit no law violations;

3. He shall restrict all travel as directed by U.S. Pretrial Services;

4. He shall maintain employment, or if unemployed, actively seek employment as directed by U.S. Pretrial Services;

5. Mr. Doak shall abide by specified restrictions on personal associations, place of abode, or travel as set by U.S. Pretrial Services;

6. Mr. Doak shall not have any contact with any co-defendants in this case;

7. He shall avoid all contact with any potential witness who may testify in this case;

8. Mr. Doak shall report on a regular basis to U.S. Pretrial Services;

9. Mr. Doak shall comply with any curfew set by U.S. Pretrial Services;

10. He shall possess no firearms, destructive devices or other dangerous weapons;

11. Mr. Doak shall refrain from use of any alcohol, or any narcotic drug or other controlled substance, and submit to alcohol or drug testing as required by U.S. Pretrial services.

\

\

\

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION FOR DETENTION- 2**

**MICHELE SHAW**
Attorney at Law
2125 Western Ave #330
Seattle, WA 98121
Bus (206) 448-9612
Fax (206) 319-5473
michele@micheleshawlaw.com

1

## II.    Background

2    Mr. Doak is a Canadian citizen accused of conspiring to deliver controlled substances

3 to and from the Western District of Washington from 2007 through 2009.  Mr. Doak fought

4 extradition from Canada to the United States on the grounds that the U.S. Bureau of Prisons

5 could not, or would not, accommodate Mr. Doak's serious medical conditions by providing

6 him lifesaving gastric bypass surgery, and knee surgery necessary for him to walk.

7    The following chart shows the timing of Mr. Doak's medical interventions *vis a vis* his

8 legal proceedings.

9

| Date | Legal Proceeding | Medical Treatment |
|------|------------------|-------------------|
| December 2009 | Mr. Doak is charged in the Western District of Washington in the Second Superseding Indictment. | Mr. Doak weighs 471 pounds and is put on a waiting list for gastric bypass surgery in Canada. |
| 2010 | Extradition proceedings not yet initiated by U.S. | Mr. Doak seeks treatment for severe knee pain.  Cannot fit into MRI due to obesity.  Must lose weight prior to appropriate diagnosis and treatment of knee. |
| Early 2011 | Extradition proceedings not yet initiated by U.S. | Mr. Doak is diagnosed with an enlarged heart and told he cannot survive a lengthy prison sentence in his current condition. |
| 1/12/2012 | U.S. requests extradition of Mr. Doak.  Mr. Doak opposes extradition due to unresolved medical issues. | Mr. Doak still waiting for gastric bypass surgery.  Confined to wheel chair most of the time. |
| 7/30/2014 | Mr. Doak continues to oppose extradition on medical grounds. | Mr. Doak receives gastric bypass surgery.  Waits to see if weight loss resolves issues with knee and digestion. |
| June 2015 | Mr. Doak continues to oppose extradition on medical grounds. | After losing more than 200 pounds, Mr. Doak has gall bladder removed to address digestion issues.  Digestion issues not resolved by removal of gall bladder. |

**MICHELE SHAW**
Attorney at Law
2125 Western Ave #330
Seattle, WA 98121
Bus (206) 448-9612
Fax (206) 319-5473
michele@micheleshawlaw.com

| Date | Legal Proceeding | Medical Treatment |
|---|---|---|
| 8/25/2015 | Mr. Doak continues to oppose extradition on medical grounds. | Mr. Doak has cartilage removed from his knee to resolve pain issues. Surgery unsuccessful in resolving pain issues. |
| October 2015 | Mr. Doak is ordered to surrender to authorities after losing his final appeal in Canada on his extradition case. | Mr. Doak's knee and digestive issues remain unresolved. |

Mr. Doak is currently prescribed at least eight medications, only some of which are being provided to him by BOP.  Without these medications, Mr. Doak remains in a great deal of pain, and also faces potential complications.

Throughout the course of this case, and the related extradition proceedings, Mr. Doak has been released four (4) times on surety. Each time, Mr. Doak's father, William Doak, posted his home to guarantee Mr. Doak's appearance in court.  Mr. Doak never failed to appear, and voluntarily turned himself in each time he was required to do so by the Canadian Courts.

Since this case has been pending, Mr. Doak has maintained regular contact with undersigned counsel.   Upon learning that the Canadian Supreme Court would not stay his extradition, Mr. Doak turned himself in to be transported to the United States.

## II.  Factors to Be Considered Pursuant to 18 USC §3142

Pursuant to 18 USC §3142(g) the Court should consider the following factors in determining whether there are conditions of release that will reasonably assure the appearance of Mr. Doak as required, and the safety of any other person and the community:

DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION FOR DETENTION- 4

MICHELE SHAW
Attorney at Law
2125 Western Ave #330
Seattle, WA 98121
Bus (206) 448-9612
Fax (206) 319-5473
michele@micheleshawlaw.com

1

**A. The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;**

Mr. Doak is alleged to have conspired to transport cocaine, MDMA, and marijuana over the U.S. – Canadian border.  There are no allegations of violence or the use of weapons in the commission of the offense.

**B. The weight of the evidence against the person;**

Discovery has not yet been provided to Defense. Therefore, it is difficult for Defense to comment on the weight of the evidence against Mr. Doak.  There is no allegation in the Second Superseding Indictment that Mr. Doak was found in possession of any controlled substances, or the proceeds from drug transactions.

**C. The history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law;**

Mr. Doak was born in Alberta and moved to British Columbia at the age of 20.   For the past two years he has lived in a trailer home on his father's property in Vernon, British Columbia with his wife, Julie Sanregret, and their 16-year-old son.  He is a long standing member of the Vernon Alliance church.  Mr. Doak is very close with his father and mother, William and Lovena Doak.  Mr. Doak also has a 17-month-old son by another relationship, but that child lives with his mother.   If released, Mr. Doak will reside with Ms. Sanregret at their residence in Vernon, British Columbia.

DEFENDANT'S RESPONSE TO
GOVERNMENT'S MOTION FOR
DETENTION- 5

**MICHELE SHAW**
Attorney at Law
2125 Western Ave #330
Seattle, WA 98121
Bus (206) 448-9612
Fax (206) 319-5473
michele@micheleshawlaw.com

Ms. Sanregret and Mr. Doak's father, William Doak, have agreed to be responsible for driving Mr. Doak between Vernon, British Columbia and Seattle for each of his court dates and appointments with his attorneys. **Exhibit A.**

Mr. Doak also suffers from serious asthma, chronic shoulder pain, an enlarged heart and experiences repeated eurhythmies.   He is on multiple medications to manage his pain and other symptoms and works with a nutritionist to combat the malnutrition that often accompanies gastric bypass surgery.

Mr. Doak has one prior criminal conviction in Canada for Conspiracy to Export Marijuana in 2007.   He violated his parole once, on November 21, 2008 when he tested positive for cocaine during routine urinalysis.  He also is alleged to have committed the offense in this case while on parole for his 2007 Canadian conviction.

When taken into custody, Mr. Doak lost his job as a cook at the Sparkling Hills Resort in British Columbia, but if released from custody, Mr. Doak has a job waiting for him as a maintenance worker at the Sulphurous Lake Resort, also in British Columbia. **Exhibit B**.

Though it is alleged Mr. Doak committed this offense while on parole for his earlier conviction, there has been no allegation of any illegal conduct by Mr. Doak since November of 2009.  During those six years, Mr. Doak has been an active member of his church and community and took the necessary steps to better his health through nutrition and surgery.  He also restored his relationship with his ex-wife, Ms. Sanregret, whom he remarried one year ago.  He is grateful for the opportunity to once again be a full time parent to his son.

**D. The nature and seriousness of the danger to any person or the community that would be posed by the person's release.**

Mr. Doak does not pose a danger to the community if released from custody.  Mr.

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION FOR DETENTION- 6**

**MICHELE SHAW**
Attorney at Law
2125 Western Ave #330
Seattle, WA 98121
Bus (206) 448-9612
Fax (206) 319-5473
michele@micheleshawlaw.com

1  Doak's only conviction was in 2007, and he is alleged to have concluded his criminal conduct

2  in this case by November of 2009.

3                                    **III.        Conclusion**

4          Mr. Doak is not a flight risk, and has made all his prior Court appearances.  Mr. Doak

5  will comply with any conditions of release ordered by this court.

6          Accordingly, we respectfully request that Mr. Doak be released on his personal

7  recognizance pending trial, or in the alternative, that Mr. Doak be released on $100,000.00

8  bail, bondable, with conditions of release.

9

10         DATED this 23rd day of November, 2015.

11

12                                              Respectfully Submitted,

13                                               _s/ Michele Shaw_____
                                                MICHELE SHAW, WSBA #19561
                                                Law Office of Michele Shaw
14                                              2125 Western Ave., #330
                                                Seattle, WA 98121
15                                              Telephone: (206) 448-9612
                                                Fax: (206) 319-5473
16                                              Email: michele@micheleshawlaw.com

17

18

19

20

21

22

23

**DEFENDANT'S RESPONSE TO**                          **MICHELE SHAW**
**GOVERNMENT'S MOTION FOR**                          Attorney at Law
**DETENTION- 7**                                     2125 Western Ave #330
                                                     Seattle, WA 98121
                                                     Bus (206) 448-9612
                                                     Fax (206) 319-5473
                                                     michele@micheleshawlaw.com

1

CERTIFICATE OF SERVICE

2        I HEREBY CERTIFY that on this day, I electronically filed the foregoing pleading

3 with the Clerk of the Court using the CM/ECF system which will send notification of such

4 filing to the attorney(s) of record for the defendant(s). I hereby certify that I have served any

5 other parties of record that are non CM/ECF participants via tele-fax/U.S. postal mail.

6

7        DATED this 23rd day of November, 2015.

8

9                                     s/ Sienna Wakatsuki
                                 Sienna Wakatsuki, Legal Assistant
                                 Law Offices of Michele Shaw, #19561
10                               2125 Western Ave., #330
                                 Seattle, WA 98121
11                               Phone: (206) 448-9612
                                 Facsimile: (206) 319-5473
12                               sienna@micheleshawlaw.com

13

14

15

16

17

18

19

20

21

22

23

**DEFENDANT'S RESPONSE TO**
**GOVERNMENT'S MOTION FOR**
**DETENTION- 8**

**MICHELE SHAW**
Attorney at Law
2125 Western Ave #330
Seattle, WA 98121
Bus (206) 448-9612
Fax (206) 319-5473
michele@micheleshawlaw.com

Nov. 14/2015

To whom it may Concern:

I think it is appropriate to gain some understanding of who Sean is as a person and not just as someone who has committed a crime.

Sean, when he was young, was a timid, gentle boy, always wanting to please. Sean did well in school right up to grade eleven. He was no problem to his teachers or to his parents and was always a well behaved boy. Sean's mother and paternal grandmother both died of ovarian cancer when he was ten. Sean and his brother had to learn to cook and do house work as their father had a career with a large multinational company and had to travel frequently. The boys were left in the care of their grandfather during these times of their father's absence.

At the age of fifteen Sean was involved in an horrific accident wherein a drunk driver ran into a vehicle he was travelling in. Sean was thrown from the car and slammed into a concrete bench which was broken due to his impact. Sean was in critical care for weeks and had to undergo a number of surgeries to save his life. Medical care had to be continued for approximately a year after the accident wherein in continued to receive treatment, pain killers and additional surgeries. These injuries continue to plague him until this very day. After the accident Sean went into a serious deep depression and his personality changed. He became more involved in drugs and alcohol and he was having difficulty figuring out what was important in his life. Sean was never a violent person and even during these troubling times he did not commit any violent actions against anyone.

Soon after this he became involved with marijuana and he decided to move to British Columbia where he got even more involved. I personally do not believe that greed or money was ever the prime motivator for what he did. He liked the "wheeling and dealing" and from some distorted point of view he thought he was helping his friends to have lots of money and this gave him a good feeling.

Sean was always taking in those who had trouble sorting out their lives and in particular two children from one of his wife's sisters who was a drug addict. He raised these children as if they were his own and they still love him.

My second wife and I did not like the life style that Sean chose and he knew this and therefore did not discuss it with us. As his father my prayers were never that he would not be caught or that he would not go to jail. My desire was always that he would quit what he was doing and I was ok with whatever it took to accomplish this. When he was finally caught and incarcerated I noticed a dramatic change in his attitude. The harshness of being in prison, the loss of freedom and the stress of the lifestyle was starting to take its toll and I could see this change in him. As is typical of many of those who live this lifestyle he did not have any money saved and he subsequently lost his home and due to all the stress he and his wife divorced.

After his last release on parole in late 2009 early 2010 Sean moved to Vernon to be close to his parents. Sean completely transformed his life. He stopped all association with those from his criminal past.

Sean in his later years had become significantly obese. Because of this, along with lingering problems from his first accident, his health had deteriorated to the point where he could do little or no work. He was in pain essentially every day and was a frequent visitor to the emergency clinic at the hospital. His

Page 1

doctor detected that he must have suffered a heart attack at some point in time (a fact that he was not aware of). This was confirmed by a heart specialist and it was determined that he had an enlarged heart. His extraction rate was 50% of normal and that if something radical wasn't done in regard to his excess weight, his life expectancy was going to be very short. During all this he was informed that the United States was seeking his extradition which put considerable extra stress on him over and above what he was already going through. The doctors were recommending gastric bypass surgery as a means to prolonging his life. In Canada there is a significant wait list for this surgery and Sean could not be immediately operated on. Sean was convinced that if he was extradited that he would not get this life saving surgery in the United States criminal system and he would surely not make it back to Canada alive.

After about a two year wait Sean finally received the bypass surgery and has subsequently lost a large amount of weight and is looking and feeling much healthier. Subsequent tests on his heart have shown an improvement in his extraction rate, but the rate is still significantly less than that of a normal person and thus his life expectancy is also less.

Sean has never shown a propensity for violence and is well liked by all who know him. This is evidenced by the fact that his incarceration was in a minimum security prison and the fact that the Crown Prosecutor had no problem supporting his bid for bail in spite of the seriousness of the charges against him.

Sean has shown a complete transformation in his life. He re-married his ex-wife and he and she, along with their son have lived on his parent's property for the last two years. All Sean wants to do is live at peace and raise his family. He recently confided in his father saying "When I was in the business I did not think I would ever be caught, however, in hindsight I have come to realize that it was not whether or not I would be caught, but when." In addition he also confided in his father that these last few years had been the happiest in his life, this in spite of health problems and having essentially no money except that provided by his disability cheque from the government. In the last few months and since a significant improvement in his health he has acquired a job as a cook at a prestigious hotel just outside the town of Vernon. They are very happy to have him there in terms of his manner and his performance.

I, William Doak, write this letter on behalf of my son Sean William Doak.

I am a Chemical Engineer (P. Eng.) with a Masters in Business Administration (MBA). I was employed with Dow Chemical in Fort Saskatchewan, AB until I retired in 1996. My present wife and I lived in Lamont, AB until 2002 when we moved to Vernon, B.C.

When my first wife died in 1984 I was left to raise two sons Chris & Sean Doak while maintaining a full time career with Dow Chemical. Fortunately my father moved in with us as his wife, my mother, died just six months prior to the death of my wife. He was available to supervise the boys as my job required that I travel a lot.

Both boys were very active in hockey and this required a lot of travel time, both during the week and on weekends.

Nov. 14/2015

Both boys attended the Lamont Alliance church with me up until the age of 15.  I was also a Bible study leader in the church.  I tithe ten percent of my income to charitable organizations.

I have volunteered a significant amount of time in helping others do strategic planning and have made numerous trips as part of the Canadian Executive Services Organization (CESO) to help aboriginal groups.  I did the original Feasibility Study for a Micro-Hydro Project for the Taku-Tlinglit band at Atlin, B.C.

Sean's stepmother and I are fully aware of the seriousness of the charges being brought against Sean.

*W. G. Doak*

William G. Doak

Page 3

**Exhibit A**
**Page 11**

November 4, 2015

To whom it may concern;

My name is Lindsey Zagar. I am the operator and general manager of the Sulphurous Lake Resort located in the Cariboo region of British Columbia, Canada.  The resort has recently come into our possession and we are in the process of putting it into operation

Sean Doak had recently been hired in the month of September 2015 to complete a renovation at a property in Kamloops; B.C. Sean was to be transferred after completing this to a renovation at Sulphurous Lake Resort. Due to the arrest of Sean he was unable to commence work at the resort.

Prior to Sean's arrest Sean was able to complete the task set out for him at the Kamloops property before the expected finish date. His dedication to the completion of the job was highly appreciated. Sean was expected to work 12 hours a day. Most days Sean would ask if he could stay longer to finish the task he had started that day. Sean was always granted the overtime due to his dedication to the job position. Without Sean's valuable knowledge pertaining to the renovation, the project would have been extended and much more costly.

Upon completion of the Kamloops project, I had asked if Sean would like to transfer to a proposed renovation at the Sulphurous Lake Resort site. Sean had advised me of his current legal situation and he might not be able to complete the job task due to a possible pending arrest, but would be willing to start the project. However, Sean was arrested prior to being able to start the project at the resort. The resort currently is in the slow period of the business year and this is the best time to accomplish any major renovations. If Sean was to return back to Canadian soil he would immediately have employment at Sulphurous Lake Resort as planned prior to his arrest.

Sean Doak has shown that he is a caring family man with genuine family goals that he set for himself. Sean often speaks of his love for his wife and children. The only time Sean would ask for time off was for his son Braeden's hockey games. Sean was a time keeper at one of the games. Sean had worked a full 12 hour day prior to Braeden's game. I was impressed with his devotion to his family and life goals. Sean was a valuable asset to the completion of the Kamloops project and there is no doubt in my mind that Sean is a valuable asset to his family. I Lindsey Zagar and on behalf of Sulphurous Lake Resort would gladly like to see Sean Doak return to Canadian soil so he may continue to be a valuable asset to his family as well as the projects of the resort. Again if Sean was to return to Canadian soils he would have immediate employment.

Thank you for your time in this matter. If there are any questions or information I may be able to provide you with, please feel free to contact myself at the resort. 1-250-644-0854.

Lindsey Zagar